UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joseph M. McKnight, Jr.,** | ) | Civil Action No.: 4:24-cv-5140 JD |
| **Plaintiff,** | ) | |
| v. | ) | **COMPLAINT** |
| **National Credit Adjusters L.L.C.,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Joseph M. McKnight, Jr., for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA"), and for actual and statutory damages, and attorney fees for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. (hereinafter "FDCPA"),

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

1

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681s-2(b), which are two of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. §1692, and 28 U.S.C. §1331, §1332, and §1367.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business here.

## PARTIES

9. Plaintiff, Joseph M. McKnight, Jr., is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant National Credit Adjusters, L.L.C. ("NCA") is a Kansas corporation that may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. Defendant NCA is a "debt collector" as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

## FACTUAL ALLEGATIONS

11. In August 2022, Plaintiff became aware that he had been the victim of identity theft after receiving a phone call from a collection agency concerning an alleged debt he owed. The phone call prompted Plaintiff to obtain a copy of his credit report, wherein Plaintiff discovered numerous fraudulent accounts for loans, credit cards, and utility bills that had all been opened in his name without his consent or knowledge.

12. On or about August 29, 2022, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

13. In September 2022, Plaintiff learned that his estranged wife, Mary Lee McKnight, had opened numerous accounts and loans in his name without his permission.

14. On September 13, 2022, Plaintiff filed an Identity Theft Intake Form with the South

Carolina Department of Consumer Affairs.

15.    On September 14, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent accounts appearing on his credit reports.

16.    Thereafter, Plaintiff required surgery which kept him out of work on disability from October 12, 2022, through April 1, 2023.

17.    Once Plaintiff was well enough to go back to work, he again began working to correct the fraudulent accounts appearing on his credit reports.

18.    On November 15, 2023, Plaintiff obtained a copy of his Experian credit report. This is when Plaintiff first learned that Defendant was reporting a National Credit Adjusters, L.L.C., Acct. No. 147XXXX (hereinafter referred to as "the Account") as a collection account, with a past due balance of $6,646.00 on Plaintiff's credit report. Plaintiff never applied for or obtained a loan or account from Rise Credit, nor did he authorize anyone to obtain a loan or account in his name.

19.    On November 15, 2023, Plaintiff also obtained a copy of his Equifax credit report. On this report, Defendant was reporting the Account as a collection account, with a balance of $6,646.00.

20.    That same day, Plaintiff also obtained a copy of his TransUnion credit report. Again, Defendant was reporting the Account as a collection account belonging to Plaintiff, with a past due balance of $6,646.00.

21.    On or about December 5, 2023, Plaintiff sent a written dispute to Experian ("First Experian Dispute") stating the Account was not his account as it was a collection account on a Rise Credit of South Carolina account which was a fraudulent account opened in his

name without his knowledge, and asked that it be removed from his credit report. With his dispute, Plaintiff included his name, address, date of birth, and Social Security number. Experian received Plaintiff's dispute on December 9, 2023, and forwarded same to Defendant.

22. On or about December 5, 2023, Plaintiff sent a written dispute to Equifax ("First Equifax Dispute") stating the Account, reporting as a collection account for a Rise Credit of South Carolina account, was a fraudulent account opened in Plaintiff's name without his knowledge. Plaintiff asked that the Account be removed from his credit report. With his dispute, Plaintiff included his name, address, date of birth, and Social Security number. Equifax received Plaintiff's dispute on December 8, 2023, and forwarded same to Defendant.

23. On or about December 5, 2023, Plaintiff sent a dispute letter to TransUnion ("First TransUnion Dispute"). In his letter, Plaintiff informed TransUnion he had been the victim of identity theft and fraud. Plaintiff disputed the Account as not his, as it was a collection account on a Rise Credit of South Carolina account which was a fraudulent account opened in his name without his knowledge, and asked that it be removed from his credit report. TransUnion received Plaintiff's dispute on December 8, 2023, and forwarded same to Defendant.

24. On or about December 11, 2023, Plaintiff received a letter from Equifax requesting additional information to verify his identity and address, which Plaintiff provided via certified mail on January 26, 2024. Equifax received the requested documents on January 29, 2024.

25. On or about December 14, 2023, Equifax sent Plaintiff a letter stating they had added an initial fraud alert on his Equifax credit file.

26. On or about January 5, 2024, Plaintiff received Equifax's Investigation Results, wherein Equifax stated it had researched the Account and that the Account had been deleted from Plaintiff's credit file.

27. On or about January 5, 2024, Plaintiff received TransUnion's Investigation Results, wherein TransUnion informed Plaintiff that Defendant had verified the Account as accurate. As a result, the disputed Account continued to be reported on Plaintiff's TransUnion credit file as a collection account with a past due balance of $6,646.00.

28. On or about February 1, 2024, Plaintiff sent a second dispute to TransUnion again stating the Account was not his account, and that it was a collection account for a Rise Credit of South Carolina account which had been fraudulently opened in Plaintiff's name without his permission ("Second TransUnion Dispute"). With his dispute, Plaintiff again included his name, address, date of birth, and Social Security number. TransUnion received the Second TransUnion Dispute on February 6, 2024.

29. On or about February 9, 2024, TransUnion sent Plaintiff correspondence stating it would not be reinvestigating his dispute of the Account as they had previously investigated the disputed Account and Defendant had verified the Account as accurate.

30. On or about March 22, 2024, Plaintiff sent Experian a second dispute by certified mail ("Second Experian Dispute"). In his letter, Plaintiff again informed Experian the Account was not his account and that it was a collection account on a Rise Credit of South Carolina account which was fraudulently opened in Plaintiff's name without his knowledge

and asked that it be removed from his credit report. Plaintiff included a copy of his driver's license with his letter. Experian received this dispute on March 25, 2024, and thereafter forwarded same to Defendant.

31. On or about March 22, 2024, Plaintiff sent TransUnion a third dispute via certified mail ("Third TransUnion Dispute"). Plaintiff again stated that he had been the victim of identity theft and fraud, and that numerous accounts and loans had been opened in his name by his estranged wife without his permission, including the Account. With his dispute, Plaintiff included a police report documenting the identity theft. Upon receipt, TransUnion forwarded same to Defendant.

32. On or about April 18, 2024, Plaintiff received the results of TransUnion's investigation into his Third TransUnion Dispute showing the Account was finally removed from Plaintiff's TransUnion credit report.

33. On or about April 25, 2024, Plaintiff sent another letter to Experian via certified mail ("Third Experian Dispute"). Plaintiff again informed Experian that he had been the victim of identity theft, and that the Account was a collection account on a Rise Credit of South Carolina account which was fraudulently opened in his name without his knowledge. Plaintiff included a copy of his driver's license with his dispute letter. Experian received this dispute on April 29, 2024, and thereafter forwarded same to Defendant.

34. To the best of Plaintiff's knowledge, the Defendant continues to report the derogatory collection Account as belonging to Plaintiff on at least one of his credit reports.

35. From at least March 2023 through the present, Defendant reported false, libelous, inaccurate, and defamatory information regarding the Plaintiff to the national credit

bureaus and to numerous third parties. While Defendant was reporting the fraudulent Account as belonging to Plaintiff, said information was provided to and/or viewed by Verizon Wireless, American Express, JPMCB Card, Reprise Financial, Axcess Financial/CNGO, Elan Fin Svcs, Sarma Collections Inc, Revco Solutions Inc, and TBOMMILESTONE.

36.    Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

37.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 36 hereinbefore as if fully set forth herein.

38.    Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

39.    Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

40.    Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

41.    Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting

inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agencies.

42.     Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

43.     As a result of Defendant's violations set forth above, the Plaintiff suffered damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, physical sickness, headaches, mental anguish, and loss of enjoyment of life. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

## COUNT TWO
### (Fair Credit Reporting Act)

44.     The Plaintiff adopts the averments and allegations of paragraphs 11 through 43 hereinbefore as if fully set forth herein.

45.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a consumer reporting agency.

46.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

47.     Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer

9

reporting agency.

48. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

49. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the account the subject of this action was inaccurate, incomplete, false, and misleading.

50. As a result of Defendant's violations set forth above, the Plaintiff suffered damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, physical sickness, mental anguish, and loss of enjoyment of life. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

## COUNT THREE
### (Defamation, Libel and Slander)

51. The Plaintiff adopts the averments and allegations of paragraphs 11 through 50 hereinbefore as if fully set forth herein.

52. Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish and emotional distress.

53. Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Account the subject of this action as it was the

result of a fraudulent account opened in Plaintiff's name without his knowledge or permission.

54. Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendant undertook to collect the Account and reported said Account as collection account on Plaintiff's credit files. Plaintiff's credit files were viewed by numerous third parties.

55. Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

56. At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

57. As a result of the intentional communications to the third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large and was forced to endure credit reporting of the Account the subject of this action, in spite of the fact that Plaintiff did not owe the Account as same was fraudulently opened in his name.

58. As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to endure collection activities by Defendant, to have negative credit reports, to be held up to public ridicule or shame, to have his credit limit lowered, and made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical sickness, loss of enjoyment of

life, and mental anguish for which he claims compensatory and punitive damages.

## COUNT FOUR
### (Violation of the Fair Debt Collection Practices Act)

59.     Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 58 as if set forth fully herein.

60.     Within the one year prior to the filing of this lawsuit, Defendant has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act with respect to the Plaintiff and an alleged consumer debt.

61.     Defendant is a debt collector as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

62.     Defendant communicated to a person credit information which was known, or which should have been known to be false in violation of §1692e(8).

63.     As a proximate result of Defendant's actions, the Plaintiff was caused to suffer worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness, physical pain and mental anguish for which he seeks the maximum statutory damages, actual damages, plus attorneys' fees and costs.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.   Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3);

D.   For relief in amounts or other appropriate relief as may be determined by the Court pursuant to 15 U.S.C. §1692 to include the Plaintiff's actual damages, statutory damages of one thousand ($1,000.00) dollars for Plaintiff, as well as attorney's fees and costs;

E.   For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation, libel and slander of Plaintiff;

F.   For this matter to be heard by a jury; and

G.   For such other and further relief as this Court deems necessary and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

National Credit Adjusters, L.L.C.
c/o Corporation Service Company -
508 Meeting Street
West Columbia, South Carolina 29169